## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THERESA M. SERANO** | : | |
| **1521 N. Leh Street** | : | |
| **Allentown, Pennsylvania 18104,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | **No.** |
| **vs.** | : | |
| | : | |
| **OFFICER KYLE GOLDEN,** | : | **Jury Trial Demanded** |
| *individually and in his official capacity as a* | : | |
| *member of the South Whitehall Township* | : | |
| *Police Department* | : | |
| **4444 Walbert Avenue** | : | |
| **Allentown, Pennsylvania 18104** | : | |
| **(Temporarily 1605 N. Cedar Crest Boulevard** | : | |
| **Allentown, Pennsylvania 18104),** | : | |
| | : | |
| **JOHN/JANE DOES 1-X,** | : | |
| *individually and in their official capacity as* | : | |
| *members of the South Whitehall Township* | : | |
| *Police Department* | : | |
| **4444 Walbert Avenue** | : | |
| **Allentown, Pennsylvania 18104** | : | |
| **(Temporarily 1605 N. Cedar Crest Boulevard** | : | |
| **Allentown, Pennsylvania 18104),** | : | |
| | : | |
| **and** | : | |
| | : | |
| **SOUTH WHITEHALL TOWNSHIP,** | : | |
| **4444 Walbert Avenue** | : | |
| **Allentown, Pennsylvania 18104** | : | |
| **(Temporarily 1605 N. Cedar Crest Boulevard** | : | |
| **Allentown, Pennsylvania 18104),** | : | |
| | : | |
| **Defendants.** | : | |

1

## COMPLAINT

**AND NOW COMES**, the Plaintiff **Theresa M. Serano**, by and through her legal counsel, Joshua E. Karoly, Esquire and with him Karoly Law Firm, LLC, and does hereby allege and aver the following:

## I. JURISDICTION AND VENUE

1. This action is instituted under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments and under federal law, particularly the Civil Rights Act of 1871 hereinafter referred to as the "Act", <u>as amended</u>, 42 U.S.C. §§ 1983 and 1988.

2. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §1331, §1343 (3), §1343 (4) and §1367, regarding the principles of pendent and supplemental jurisdiction over related state law claims.

3. Venue in the Eastern District is properly laid pursuant to 28 U.S.C. §1391, insofar as the alleged unlawful conduct complained of in this Complaint, which forms the factual and legal basis of the Plaintiff's claims, arose within the geographical limits of this District in general and within the geographical limits of South Whitehall Township, Lehigh County, Pennsylvania, in particular.

## II. **PARTIES**

4.    Plaintiff Theresa A. Serano (hereinafter referred to as "Plaintiff" or "Serano") is an adult individual, who has a home address of 1521 N. Leh Street, Allentown, Lehigh County, Pennsylvania 18104.

5.    Defendant Officer Kyle Golden (hereinafter referred to as "Golden") is an adult individual who, at all times relevant hereto, was serving in his official capacity as a sworn officer of the South Whitehall Township Police Department, with a permanent address of 4444 Walbert Avenue, Allentown, Pennsylvania 18104 (and a temporary address of 1605 N. Cedar Crest Boulevard, Allentown, Pennsylvania 18104), and was entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and the Township of South Whitehall. Defendant Golden was entrusted to protect the Constitutional rights of those he encountered, and at all times relevant hereto, was acting under the authority and color of law, and in concert with one or more of the other individual Defendants in the performance or conduct of their actions, or acted independently of them

6.    Defendant(s) John/Jane Does 1-X (hereinafter referred to as "Doe") are adult individual(s) whose present identities are unknown but who, at all times relevant hereto, was/were serving in his/her/their capacity as a sworn officer(s) of the South Whitehall Township  Police Department, with a

permanent address of 4444 Walbert Avenue, Allentown, Pennsylvania 18104 (and a temporary address of 1605 N. Cedar Crest Boulevard, Allentown, Pennsylvania 18104), and was/were entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and Township of South Whitehall. Defendant(s) Doe was/were entrusted to protect the Constitutional rights of those he/she/they encountered, and at all times relevant hereto, was/were acting under the authority and color of law.

7. Defendant South Whitehall Township (hereinafter referred to as the "Township") with a permanent address of 4444 Walbert Avenue, Allentown, Pennsylvania 18104 (and a temporary address of 1605 N. Cedar Crest Boulevard, Allentown, Pennsylvania 18104), is a First Class Township and governmental entity encompassing 17.2 square miles within the County of Lehigh and Commonwealth of Pennsylvania, empowered under the First Class Township Code and its own ordinances, to establish, regulate, and control its Police and Police Department for the enforcement of laws and ordinances within its jurisdiction, and for the purpose of protecting and preserving the persons, property and the Constitutional rights of individuals within the geographical and legal jurisdiction of the Defendant Township.

## III. PRE-DISCOVERY FACTUAL ALLEGATIONS

8.  On or about the evening of January 7, 2019, Plaintiff Serano was planning on being an overnight guest at the Comfort Suites hotel on Hamilton Boulevard, located in South Whitehall Township, Lehigh County, Pennsylvania.

9.  Serano had consumed a significant amount of alcohol while at the Comfort Suites and became heavily intoxicated.

10. Due to her level of intoxication, the Comfort Suites reportedly contacted the South Whitehall Township Police Department (hereinafter referred to as "SWTPD") and requested their assistance because the Comfort Suites no longer wanted Serano as a patron of the hotel for the remainder of that evening.

11. Several South Whitehall Township Police Officers responded to the hotel in full uniform (equipped with body cameras) and operating marked patrol vehicles (equipped with MVR systems), including Defendants Golden and several of the presently unidentified officers referred to as Defendant Doe.

12. It was apparent to any individual, including the Defendant Officers who were specially trained to detect and discern levels of intoxication, that Serano was highly intoxicated and physically and mentally vulnerable.

5

13. At the request of the Officers, Serano agreed to leave the hotel. The Officers assisted in retrieving Serano's personal items from her hotel room, and Serano exited the hotel.

14. While outside of the hotel and in the presence of Doe, Golden offered to provide Serano with a ride to another hotel in his marked police vehicle.

15. Serano was aware that she was incapable of operating a vehicle in her intoxicated condition, and trusted Golden in his capacity as a police officer, that he had no ulterior motive beyond her well-being, and reasonably believed, especially in her intoxicated state, that he would safely transport her to a nearby hotel without incident.

16. It is believed and therefore averred that Golden violated SWTPD policies and procedures by transporting Serano in his patrol car, especially alone, under the circumstances; and, that if no such policies and procedures existed, the Township was seriously deficient in that regard.

17. Defendant Doe, knowing Serano's highly vulnerable condition, ignored Golden's violation of Department policies and procedures, and turned a blind eye to Golden's conduct, clearly placing Serano in a susceptible position to have her Constitutional rights violated.

18. Serano accepted Golden's offer of transportation and entered Golden's marked SWTPD's patrol vehicle, and Golden began to drive away from the hotel.

19. Despite several hotels being within walking distance or a short drive from the Comfort Suites, Golden began to transport Serano across town to the opposite side of the South Whitehall Township border, in what is now believed to be an effort to conceal his planned Constitutional misconduct.

20. It is believed and therefore averred, that, also against SWTPD policies and procedures, Golden deactivated his body camera and MVR ("dashcam") audio and video recordings, and "terminated" his call with the Department dispatch, prior to actually completing his duties regarding the call, all in an effort to conceal his planned actions.

21. While transporting Serano, Golden began to speak to Serano in a sexually suggestive manner.

22. Even in her altered state, Serano was aware, and Golden made no secret of the fact, that Golden believed he could potentially criminally charge Serano for her alleged conduct earlier in the evening, in what was an obvious attempt to make known the discretionary police power and singular authority Golden held over Serano at that point.

23. Golden transported Serano to the Holiday Inn Express hotel off of the 15th Street exit of Route 22, located behind the Rothrock Motors car dealership, which is also located in South Whitehall Township.

24. Upon arrival, Golden directed Serano to enter the hotel and pay for a room.

25. Serano obeyed Golden's directive, and after securing room 108, returned to the parking lot.

26. Upon Serano's return to the parking lot Golden had moved his patrol vehicle to a less visible parking space and returned to the hotel.

27. They both then entered the hotel and walked to Room 108. The hotel key to the room malfunctioned, and a female hotel employee had to assist Serano to access her room.

28. Golden and Serano both entered the room and while in the hotel room Golden engaged in sexual intercourse with Serano.

29. At the time Golden had sexual intercourse with Serano, Serano was still very visibly intoxicated, Golden remained in his full police uniform, and Golden took advantage of his position of power and superior physical force over the intoxicated Serano.

30. Serano did not wish to engage in sexual intercourse with Golden and was in a highly intoxicated state, was going in and out of consciousness and was in an impaired physical and mental condition which left her unable to consent to

sexual intercourse or to physically resist Golden's engagement in sexual intercourse, a fact both obvious and easily recognized by the legally trained police officer, Golden.

31. Serano was in and out of consciousness but, recalls that  Golden continued to wear his radio during the sexual assault (which was eventually removed) and did not wear a condom.

32. A short time later, Golden told Serano that he was "finished" and got dressed.

33. As Golden was getting dressed Serano recalls stating that she did not know Golden's name. Golden replied that she did know where he worked, and then left the hotel room.

34. Serano immediately passed out on the bed when Golden left.

35. Serano awoke in the morning very confused and was initially unaware of her whereabouts.

36. Serano ordered an Uber to pick her up from the Holiday Inn and to transport her back to the Comfort Suites, where her car remained parked in their parking lot.

37. An Uber arrived and transported her to her car, and Serano returned home.

38. Serano was overcome with fear and anxiety in the days that followed. Serano was fearful of reporting a police officer and knew that it would be her intoxicated word against his. But her fear and anxiety eventually gave way to

depression and anger, and she decided to try to track down the Officer that had assaulted her at the Holiday Inn on the night of the 7th and into the early morning hours of the 8th.

39. Serano searched the internet for South Whitehall police officers and came across an article featuring Kyle Golden and his former K-9 partner, and instantly recognized Golden as the perpetrator.

40. Serano called the SWTPD attempting to confront Golden. Golden was not available, and Serano was forced to leave a message.

41. Golden returned the call a short time later. During the call, Golden admitted that he, in fact, committed the sexual assault upon Serano, apologized - calling himself "a piece of shit" for his actions, and then offered a bribe of $2,500.00 to Serano if she would not disclose what Golden did to her, to anyone else.

42. Serano did not accept the bribe, and instead notified law enforcement about Golden's sexual assault, attempted cover-up and bribe.

43. It is believed and therefore averred that the SWTPD interviewed Golden regarding Serano's accusations, that Golden admitted his conduct, and that he either resigned or was terminated as a result.

44. Upon information and belief, members of the South Whitehall Township Police Department have a history of being disrespectful, sexually harassing, and even assaultive to women, as well as for other Constitutional violations –

all of which were known to the supervisors, decisionmakers, and the Township. This history has not been objectively investigated and has previously gone undisciplined and uncorrected and, in essence, these past actions were condoned and encouraged by supervisors and the decisionmakers in the Township, leading to the Constitutional violations complained of in this action.

45. It is believed and therefore averred that little or no discipline, nor remedial or more or better training, was issued or required by supervisors or the decisionmakers of the Township regarding the past clear Constitutional violations committed by members of the Department.

46. This lack of discipline or corrective action further evidences that violations of citizens' Constitutional rights were condoned, if not encouraged, by deliberately indifferent supervisors, decision-makers, and the Township itself.

47. Upon information and belief the South Whitehall Township Police Department and the Township itself provided no, or inadequate training, to Golden and Doe pertaining to the proper handling of intoxicated females in the given circumstances.

48. Upon information and belief, the South Whitehall Township Police Department and Township itself provided no, or inadequate, rules, regulations or procedures pertaining to the proper treatment of visibility intoxicated

persons, especially females, or if they did, that they were routinely not enforced.

49. Upon information and belief, numerous officers of the South Whitehall Township Police Department routinely evidenced sexual bias and or sexual misconduct, in the performance of their duties. Upon information and belief, no disciplinary action was ever taken against an officer for sexual discrimination, or if there was discipline, it was nominal.

50. Upon information and belief, prior to the incident giving rise to Plaintiff's Complaint, the written policies that did exist for the SWTPD which were relevant to the misconduct here, were routinely ignored with impunity and this was accepted as the common practice and custom of the Department.

51. Upon information and belief, despite repeated incidents/complaints of sexual harassment and/or assault by members of the South Whitehall Township Police Department, no significant efforts were made to establish or ensure that appropriate policies and standards were followed within the Police Department. No efforts were made to ensure citizens' Constitutional rights were not violated.

52. The aforesaid acts and omissions of the Defendants evidence a deliberate indifference to the rights of individuals, such as the Plaintiff, under the Fourth and Fourteenth Amendments to the United States Constitution.

53. At all times relevant hereto, the legal principles regarding the rights of persons, such as Serano, were well established and it was not reasonable for the Defendants to believe that their actions would not deprive Serano of those rights.

54. The actions of the Defendants violated the clearly established and well-settled federal Constitutional rights of Serano as more clearly set forth in the counts below.

55. Golden's conduct, in sexually assaulting a visibly highly intoxicated female under his control was totally and completely outrageous and is unacceptable in a civilized society.

56. Golden was an ill-trained police officer who unconstitutionally took advantage of the Plaintiff's vulnerable condition and his position of power and authority over Serano, and sexually assaulted her while she was unable to consent to Golden's advances.

57. Upon information and belief, supervisors and the Township Manager, previously ignored citizens' complaints and officers' violations of citizens' Constitutional rights. In effect, supervisors and the Township communicated to the Department and the public that any attempt to reform the Department would be ineffectual and that the customs and practices of the South Whitehall Township Police Department would remain intact.

58. The Township and supervisors failed to adopt and enforce reasonable and necessary policies and procedures to end the culture of abuse and deliberate indifference to the rights and safety of others that had become the long-standing hallmark of the South Whitehall Township Police Department. The Township's Monell policy-makers and supervisors continued to encourage this custom and practice of deliberate indifference to the Constitutional rights of others by rewarding inappropriate actions; by failing to promulgate appropriate rules, regulations and policies; by failing to enforce existing rules and regulations; by failing to discipline; by inappropriate hiring, screening, training, testing, retention, supervision and promotions; and by reinforcing the old culture of deliberate indifference.

59. As a direct and proximate result of the said acts or omissions of Golden, and that of the Township's decisionmakers and supervisors, the Plaintiff suffered, *inter alia*, the following injuries and damages:

     i.     physical and mental pain and suffering, in both the past and the predictable future, including discomfort, ill health, loss of sleep, and other emotional injuries including stigma, humiliation, distress, fright, PTSD and emotional trauma;

     ii.     medical and psychological expenses, past and future;

     iii.     loss of liberty;

iv.   invasion of her privacy and freedom of association;

v.   loss of bodily integrity;

vi.   loss of life's pleasures;

vii.   damage to her reputation, embarrassment and humiliation;

viii.   loss of employment, income and shortening of economic horizons;

ix.   general damages for violation of Plaintiff's Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and to the extent the Pennsylvania Supreme Court may hereafter authorize it, relief, including as hereinafter requested under Article 1, Section 8 of the Pennsylvania Constitution; and

x.   punitive damages (against Golden individually), which are justified factually as alleged herein, and legally, because Golden acted maliciously and/or wantonly in violating the Plaintiff's Constitutionally (federal and state) protected rights, and intentionally, recklessly and willfully engaged in reprehensible and outrageous conduct not to be tolerated in a civilized society.

60.   Plaintiff further seeks counsel fees and costs as authorized by statute.

61. The actions of the Defendants violated the clearly established and well-settled federal Constitutional rights of the Plaintiff and it was unreasonable for any Defendant to believe that he was not violating such rights as more clearly set forth in the Counts below.

62. The Defendants, individually and collectively, at all times pertinent to the claims asserted herein, acted under color of state law.

63. While acting under color of state law, the Defendants deprived the Plaintiff of various federal Constitutional rights.

**COUNT I**
**42 U.S.C. §1983**
**Violation of Right to Bodily Integrity**
***Against Defendant Golden***

64. The preceding paragraphs are incorporated herein by reference as though fully set forth.

65. It is well-established that individuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment.

66. The contours of the right to bodily integrity are sufficiently clear that a general Constitutional rule already identified in the decisional law applies with obvious clarity to the facts alleged here.

67. The actions attributed to Defendant Golden hereinbefore constitute a clear conscience-shocking disregard for Plaintiff's right to bodily integrity because,

16

among other things, rather than serving to protect Plaintiff from her own vulnerable intoxicated condition, as Defendant Golden claimed he was doing, the Defendant acted for his own personal gratification and sexually assaulted Plaintiff at a time when she was so impaired as to be clearly incapable of giving consent to the sexual intercourse in which Defendant Golden engaged.

68. Adding further to his conscious-shocking conduct, Defendant Golden turned off his body and dash cameras, and contacted dispatch and fabricated his actions, in an effort to conceal his planned sexual assault upon the Plaintiff. Defendant Golden also hid his cruiser car from view, and surreptitiously re-entered the hotel to conceal his planned actions of sexual assault. Following the sexual assault upon the Plaintiff, Defendant Golden offered a financial bribe to the Plaintiff to silence her.

69. Defendant Golden violated Plaintiff's substantive due process rights under the Fourteenth Amendment to the United States Constitution by violating Plaintiff's bodily integrity as stated in detail hereinbefore.

70. Golden used his position of authority under color of law and use of force, to sexually assault the Plaintiff, a visibly highly intoxicated female who, it was readily apparent to him, was suffering from constructive unconsciousness and was unable to knowingly consent to his indecent assault.

71.  The Plaintiff had the right not to be sexually assaulted by Golden, an on-duty police officer, who was actively handling a call-out concerning which the Plaintiff was the subject.

72.   Defendant Golden's actions of sexually assaulting the Plaintiff constitute a deprivation of the rights guaranteed to the Plaintiff under the United States Constitution and were committed under color of law in as much as he was actively on duty, was in the process of performing police-related business for which he was paid by the taxpayers of South Whitehall Township, he was in uniform presenting himself as a sworn police officer (which he was) both to the Plaintiff and all persons in the vicinity, and he was endowed with, and did exercise, all the indicia of, and the compulsion afforded by, his status as a police officer.

73.  As a result of Defendant Golden's violation of Plaintiff's right to bodily integrity in violation of her Fourteenth Amendment rights, the Plaintiff suffered damages as stated herein.

74.  Defendant Golden is liable for his personal involvement in the commission of the acts complained of here.

75.  Defendant, the Township of South Whitehall, is liable for the acts of Defendant Golden, pursuant to the claim of Municipal Liability (Monell) and

supervisory liability, expressly set forth herein, and which is incorporated by reference as if set forth et extenso here.

76. Further, the conduct exhibited by the Defendant subordinate municipal police officer and employee, which occurred on January 7/8, 2019, was not unexpected. Neither were they the deeds of an independent, non-supervisory actor. But, instead, they constituted predictable behaviors of an inappropriately hired, and retained, psychologically and/or emotionally unfit and inadequately trained and undisciplined subordinate who also operated with perceived impunity due to the deliberate indifference of his supervisors and policymakers, and the Township, and their joint policies, practices and customs, which operated as the moving force behind what Golden believed to be his unaccountable effort to engage in what had become, all too customary, Constitutional deprivations directed at a member of the community.

77. As further alleged hereinafter, the likelihood is that, but for the alleged acts and omissions committed by the Township by and through its policymakers and supervisors, the injuries inflicted upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendant Golden, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for

arbitration in the Federal District Court for the Eastern District of Pennsylvania, and against Defendant Golden for punitive damages, and for other such relief as the Court deems just.

**COUNT II**
**42 U.S.C. §1983**
**Unlawful Seizure and Excessive Use of Force**
***Against Defendant Golden***

78.  The preceding paragraphs are incorporated herein by reference as though fully set forth.

79.  The Fourth Amendment to the United States Constitution protects persons from being subjected to unlawful seizure and excessive force.

80.  The Plaintiff was subjected to a seizure within the meaning of the Fourth Amendment through the application of force and through the manner in which Defendant Golden restrained the Plaintiff during his sexual assault upon her.

81.  Said seizure was unlawful and did not serve a legitimate government objective but merely served Defendant Golden's personal sexual gratification. Said seizure and the application of force against the Plaintiff were unreasonable under the circumstances and unconstitutionally excessive in violation of the Fourth Amendment as applied to the states through the Fourteen Amendment.

82.  Defendant Golden used excessive force in the sexual assault of the Plaintiff in that any amount of force used by the Defendant was unreasonable. This

included the forceable compunction associated with the authority of his position and the power of arrest he held over the Plaintiff at all relevant times.

83. The physical force used was not Constitutionally nor lawfully permitted, much less required, nor should it have been employed.

84. Defendant Golden used excessive force in his encounter with the Plaintiff by intentional, willfully and wantonly sexually assaulting her.

85. The use of force by the Defendant was not reasonable under the Constitution where, as here, there was no authority for any force to be used, much less force to accomplish a sexual assault.

86. The nature and degree of force utilized against the Plaintiff by Defendant Golden was willful, wanton, reckless, outrageous, reprehensible, malicious, vicious, intentional, malevolent, and not be tolerated in a civilized society and clearly warrants an award of punitive as well as compensatory damages.

87. As a result of the unlawful seizure and restraint of, and the excessive use of force employed against, the Plaintiff in violation of her Fourth Amendment rights, the Plaintiff suffered damages as stated herein.

88. Defendant Golden is liable for his personal involvement in the commission of the acts complained of here.

89. Defendant Township is liable for the acts of Defendant Golden pursuant to the claims of municipal liability, expressly set forth herein, and which are incorporated by reference as if set forth *et extenso* here.

90. Defendant, the Township of South Whitehall, is liable for the acts of Defendant Golden pursuant to the claim of Municipal Liability (<u>Monell</u>), and supervisory liability expressly set forth herein, and which is incorporated by reference as if set forth <u>et extenso</u> here.

91. Further, the conduct exhibited by the Defendant subordinate municipal police officer and employee, which occurred on January 7/8, 2019, was not unexpected. Neither were they the deeds of an independent, non-supervisory actor. But, instead, they constituted predictable behaviors of inappropriately hired, and retained, psychologically and/or emotionally unfit and inadequately trained and undisciplined subordinate who also operated with perceived impunity due to the deliberate indifference of his supervisors and policymakers, and the Township, and their joint policies, practices and customs, which operated as the moving force behind what Golden believed to be his unaccountable effort to engage in what had become, all too customary, Constitutional deprivations directed at a member of the community.

92.  As further alleged hereinafter, the likelihood is that, but for the alleged acts and omissions committed by the policymakers and supervisors of the Township, the injuries inflicted upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendant Golden, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, and against Defendant Golden for punitive damages, and for other such relief as the Court deems just.

## COUNT III
### 42 U.S.C. § 1983
### Failure to Intervene
### *Against Defendants Doe*

93.  The preceding paragraphs are incorporated herein by reference as though fully set forth.

94.  Each of the Doe Defendants are liable for failing to intervene to prevent the violation of the Township policies, practices and procedure and the Plaintiff's Constitutional rights which were committed in their presence and which led inexorably to the sexual assault upon Plaintiff and the additional Constitutional violation of Plaintiff's federally protected rights, at the hands of Golden.

95. The Doe Officers were aware that the South Whitehall Police Department policies, practices and procedures prohibited Defendant Golden from placing a highly vulnerable, visibly intoxicated female into his patrol car, without placing her under arrest and then by driving away with her, with no accompaniment of another (preferably female officer) to an unknown location.

96. The Doe Officers either knew, or reasonably should have known that the purpose of said policies, practices and procedure was to protect women from being sexually victimized by members of the force, as well as to possibly protect officers from baseless allegations regarding same.

97. The Doe Officers either knew or reasonably should have known that their intervention was necessary to protect the Plaintiff from her improper removal from the scene under the aforesaid circumstance. They each had a reasonable and realistic opportunity to intervene, and failed to do so, thereby condoning if not facilitating the series of unconstitutional deprivations the Plaintiff continued to suffer.

98. Plaintiff's Constitutional rights were violated as alleged hereinbefore.

99. The need to intervene to protect the Plaintiff from a violation of her Constitutional rights is even more apparent in view of the following factors:

a) The Defendant Officers (Golden and Does) were present to hear and observe the events which occurred prior to Defendant Golden's removal of the Plaintiff from the Comfort Suites hotel location.

b) They were all aware of the unwanted person radio call and responded to it.

c) They observed that the Plaintiff was highly visibly intoxicated which rendered her vulnerable to designing persons, a condition which they all were trained to detect and protect.

d) They were aware that proper police practices and, on information and belief, the policies, practices and procedures of the South Whitehall Police Department, prohibited their personal and physical contact with a subject of the opposite sex unless, where possible, a female officer was available or two or more male officers supervised the interaction.

e) They agreed to allow Defendant Golden to place the vulnerable Plaintiff in his marked patrol car, alone with him, and allowed him to remove her to parts unknown while not having placed her under arrest.

f) The Doe Defendants, may or may not have been told by Defendant Golden that he intended to have sexual relations with the Plaintiff, taking advantage of the condition that she was in but, they were aware by contemporaneous radio broadcasts that Defendant Golden did not

report that he had taken the Plaintiff into custody, nor did he report that

he was transporting her to headquarters, or to her home in Allentown.

g) From radio communications and radio silence, the Defendants either

knew or should have known that Defendant Golden was spending

undisclosed time, while on duty, with the highly intoxicated Plaintiff at

a location he did not disclose to the com center, headquarters or to them.

h) Neither of the Doe Defendants cautioned, restrained, prevented or

reported the conduct of Defendant Golden, even though the clear and

realistic opportunity to do so existed and, even though the clear

obligation to do so also existed.

100. Accordingly, Defendants Doe are liable for all the harm, and hence damages,

suffered by the Plaintiff, as stated herein.

101. The likelihood is that, but for the alleged acts and omissions committed by

Defendants Doe, the injuries inflicted upon the Plaintiff by Defendant Golden

would not have occurred.

102. Defendants are jointly liable for their personal involvement in the commission

of the acts complained of here based upon their failure to act when they had a

duty to do so.

103. Defendant, the Township of South Whitehall, is liable for the acts of

Defendants Golden and Doe pursuant to the claim of Municipal Liability

(Monell), and the acts or omissions of their policymakers and supervisors, expressly set forth herein, and which are incorporated by reference as if set forth et extenso here.

104. Further, the conduct exhibited by the Defendant subordinate municipal police officers and employees, which occurred on January 7/8, 2019, was not unexpected. Neither were they the deeds of independent, non-supervisory actors. But, instead, they constituted predictable behaviors of inappropriately hired, and retained, psychologically and/or emotionally unfit and inadequately trained and undisciplined subordinate who also operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, and the Township, and their joint policies, practices and customs, which operated as the moving force behind what Golden and the Doe Officers believed to be their unaccountable effort to engage in what had become, all too customary, Constitutional deprivations directed at a member of the community.

105. As further alleged hereinafter, the likelihood is that, but for the alleged acts and omissions committed by the policymakers, supervisors and Township, the injuries inflicted upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants Does, jointly and

severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, for punitive damages, and for other such relief as the Court deems just.

### COUNT IV
### 42 U.S.C. §1983
### Civil Conspiracy
### *Against Defendants Golden and Doe*

106. The preceding paragraphs are incorporated herein by reference as though fully set forth.

107. The circumstances establishing a conspiracy here are compelling:

   a) The Defendant Officers (Golden and Does) were present to hear and observe the events which occurred prior to Defendant Golden's removal of the Plaintiff from the Comfort Suites hotel location.

   b) They were aware of the unwanted person radio call and responded to it.

   c) They observed that the Plaintiff was highly visibly intoxicated which rendered her vulnerable to designing persons, a condition which they all were trained to detect and protect.

   d) They were aware that proper police practices and, on information and belief, the policies, practices and procedures of the South Whitehall Police Department, prohibited their personal and physical contact with

a subject of the opposite sex unless, where possible, a female officer was available or two or more male officers supervised the interaction.

e) They agreed to allow Defendant Golden to place the vulnerable Plaintiff in his marked patrol car, alone with him, and allowed him to remove her to parts unknown while not having placed her under arrest.

f) The Doe Defendants, may or may not have been told by Defendant Golden that he intended to have sexual relations with the Plaintiff, taking advantage of the condition that she was in but, they were aware by contemporaneous radio broadcasts that Defendant Golden did not report that he had taken the Plaintiff into custody, nor did he report that he was transporting her to headquarters, or to her home in Allentown.

g) From radio communications and radio silence, the Defendants either knew or should have known that Defendant Golden was spending undisclosed time, while on duty, with the highly intoxicated Plaintiff at a location he did not disclose to the com center, headquarters or to them.

h) Neither of the Doe Defendants cautioned, restrained, prevented or reported the conduct of Defendant Golden, even though the clear and realistic opportunity to do so existed and, even though the clear obligation to do so also existed.

i) The Defendant Officers acted fully in concert – one with the other, obviously demonstrating a common plan, scheme or design that they agreed upon, and whether spoken or unspoken, a meeting of the minds occurred.

j) Plaintiff believes that pre-trial discovery concerning these events will reasonably provide further evidence, not available to her now, which will support the conspiratorial nature of the Defendant Officers conduct on the night and early morning hours of the day in question, including the content of the reports which they were required to file regarding the subject incident.

108. It is also clear from the foregoing that the Defendants, and each of them together:

a) engaged in a single plan, the essential nature and general scope of which was known by them;

b) executed that plan in a coordinated way and by a common design which had as its probable and nature consequence the violation of Plaintiffs' Constitutional rights as set forth herein;

c) acted in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which was an agreement

between them to inflict, or to allow the infliction of, a wrong against, or injury upon, Plaintiff as more fully set forth herein; and,

d) as a direct and proximate result of the foregoing, and the overt acts described hereinbefore, Plaintiff suffered the damages enumerated.

109. These actions and circumstances, pre-discovery, would, in and of themselves, warrant a reasonable fact finder in concluding that the Defendants, formed a conspiracy to deprive the Plaintiff of her Constitutionally protected rights because:

a) They formed a combination by which they, together, aided and abetted the commission of one or more of the unconstitutional and criminal acts of unlawful restraint, indecent assault, rape, assault, battery, and bribery, committed by one or more of the Defendant Officers, as well as its cover-up of some of these acts;

b) This constitutes a "conspiracy"; and,

c) By being state actors who used their conspiracy to deprive the Plaintiff of her Constitutionally protected civil rights as described, each is liable for the harms inflicted upon the Plaintiff as a result of their concerted actions, even if they themselves were not the perpetrator.

110. This conspiracy, as it applied to the Plaintiff herein, was an express or implied agreement between the Defendants, to deprive the Plaintiff of her

Constitutional rights, *inter alia*, to be free from unlawful restraint, violations of bodily integrity and excessive use of force.

111. The Defendants were voluntary participants in the common venture, understood the general objectives of the plan, and knew it involved the likelihood of the deprivation of Constitutional rights, accepted those general objectives, and then agreed, either explicitly or implicitly, to do their part to further those objectives, or to avoid the detection.

112. The Defendants then did each, either act, or where there was a duty to act, refrained from acting, in a manner intended to facilitate the deprivation of Plaintiffs' Constitutional rights as alleged.

113. An actual deprivation of those rights did occur to the Plaintiff resulting from the said agreement or common design, and as a foreseeable consequence thereof.

114. The Defendants, and each of them, are jointly and severally responsible for the injuries caused by their fellow co-conspirator even if, or when, their own personal acts or omissions did not proximately contribute to the injuries or other harms which resulted.

115. As a result of the civil conspiracy entered into and acted upon by Defendants Doe and Golden, Plaintiff suffered a deprivation of her Constitutional rights, and suffered damages as stated herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants Doe and Golden, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, for punitive damages, and for other such relief as the Court deems just.

**COUNT V**
**42 U.S.C. §1983**
**Municipal Liability**
*Against the Township of South Whitehall*

116. The preceding paragraphs are incorporated herein by reference as though fully set forth.

117. South Whitehall Township operates under the First-Class Township Code and, to the extent that they are not inconsistent, its own enacted Code and related ordinances promulgated by its duly elected Board of Commissioners.

118. The corporate power of the Township is vested in the Board of Township Commissioners, and the Commissioners may delegate, subject to recall, any of their respective non-legislative and non-judicial powers and duties to the Township Manager, but they may not delegate their or the Township's ultimate legal responsibility and/or liability for same.

119. The Township Commissioners have, *inter alia*, the broad authority and responsibility under the First Class Township Code "[t]o establish, equip, and maintain a police force, and to define the duties of same," and, to "prescribe all necessary rules and regulations for the organization of the police force."

120. The Township Commissioners have reiterated these same responsibilities in Ordinance Number 116(m), adopted on June 9, 1969, wherein they specifically provided that, "[t]he Board of Commissioners of the Township of South Whitehall shall . . . appoint and fix the member rank, tenure, compensation and allowances of the Chief and other members of the Township Police Department and shall prescribe the necessary rules and regulations for the organization and operation of the police service."

121. The First Class City Code also requires the Board of Commissioners to "designate the Chief of Police", and to supervise the police, and further requires that "[t]he chief of police and policemen shall obey the orders of the board of township commissioners or such other person or committee as may be designated by ordinance or resolution of the board for such purposes."

122. Additionally, by Ordinance, the Board of Commissioners delegated to the Township Manager the power and duty to "[m]anage and provide for the

supervision of the . . . Police Department," but did not, as stated above, delegate or transfer the ultimate legal responsibility and liability for seeing to it that said delegation was properly performed.

123. The Township's policy-makers and supervisors, by the terms of the First Class Township Code and the South Whitehall Township Code and related Ordinances, included the Township Commissioners, the Township Manager (and others to whom duties and responsibilities were lawfully delegated); and they knew that they themselves, like their police officers, would require proper training to carry out their non-legislative supervisory and policy-making responsibilities, set forth herein, and yet they received either no training or inadequate training in the proper performance of those duties.

124. For example, the Township's Commissioners received either no training or inadequate training to determine what rules and regulations where necessary and proper for the organization and operation of their police force; or, what orders were reasonable and necessary to be issued to properly and effectively supervise the police force or its chief; or how to properly supervise and instruct the Township Manager in the exercise of his delegated powers and duty to manage and provide for the supervision of the Township Police Department.

125. As a consequence, it is believed and therefore averred based upon Plaintiff's pre-complaint investigation, that the Township failed to issue any order or otherwise take proper action to prescribe the necessary and proper rules and regulations for the organization and operation and oversight of its police department.

126. In like fashion, the Township Commissioners failed to provide adequate training to the Township Manager so that he was able to carry out the duties the Commissioners delegated to him to manage and provide for the supervision of the Police Department.

127. Consequently, the Township Manager, as the appointed chief administrative officer of the Township, also failed to see to it that necessary and appropriate regulations and policies to manage and provide for the supervision of the Police Department were properly provided for, and or enforced.

128. The Township and its Manager knew they were not being trained or, at the least, that their need for more or better training was obvious as to be apparent to any reasonable policy-maker or supervisor, and that as a consequence, Constitutional violations were likely to result, including the Constitutional harms which befell the Plaintiff here.

129. The Township and its Manager either knew or should have known that their own lack of training precluded them from: properly acting upon their policy-

making and supervisory responsibilities; receiving necessary objective intelligence regarding actual operations and conduct of the members of their police force; eradicating police dysfunction and misconduct; monitoring and preventing sexual harassment, sexual abuse, sexual assault, the use of excessive force; identifying inadequate training and supervision (both by command and line officers); and precluded them from taking necessary precautions seeing to it that when confronted with the circumstances that Defendant Officers faced on January 7-8, 2019 they were properly prepared to respond in a professional and Constitutional manner.

130. The law is clear that the rubric 'supervision' entails among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking.

131. As indicated above, the Township was not only deliberately indifferent to these duties, but its Commissioners and Manager were untrained or inadequately trained to the point that Constitutional violations, such as the unconstitutional violation of bodily integrity asserted upon the Plaintiff by an inadequately screened, trained and/or tested and retained police officer, were likely to result.

132. Prior to January 7, 2019, the Defendant Township of South Whitehall, failed to properly screen, test, hire and train its officers, failed to develop, adopt and/or properly enforce certain necessary police policies, and/or, developed and maintained policies and/or customs which themselves exhibited deliberate indifference to the Constitutional rights of persons in South Whitehall Township, which directly caused the aforesaid violations of Plaintiff's Constitutional rights.

133. The violations of Plaintiff's Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution by Defendant Golden and Doe, and Plaintiff's injuries and related damages, were directly and proximately caused by the actions and/or inactions of the Defendant Township, acting by and through the Township Manager, and its policy-making and/or supervisory personnel, who have encouraged, tolerated, ratified, and have been deliberately indifferent to, *inter alia*, deficient policies, patterns, practices, training and customs, to the need for monitoring, supervising and enforcing proper policies and necessary training; and, to the need for more or different policies, training, supervision, screening, testing, investigating, or discipline in the nexus-related areas of:

    a)    The respect for the bodily integrity of citizens;

b) Policies, training, practices and procedures which are designed to prepare police officers for realistic and multifarious situations which they are likely to encounter in the performance of their sworn duties;

c) Crises Intervention Training;

d) Implicit Bias Training (including sexual sensitivity training);

e) Skill Building Training;

f) Communication Skills Training;

g) Judgmental Skill Building Training;

h) Suspect Contacts Training;

i) Unusual Occurrences Training;

j) Arrest and Control Training;

k) Impaired Persons Training (organic or by reason of alcohol or drugs);

l) The proper testing, evaluation and elimination, or at least, monitoring of officers whom it knew or should have known were suffering from emotional, psychological, drug dependent problems, and/or sexual proclivities which were likely to impair their ability to function effectively as officers or otherwise present a risk to the public they are sworn to protect;

m)   The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;

n)   Police officers' use of their status as police officers to employ the unreasonable use of force or to achieve ends not reasonably related to their police duties;

o)   The failure of police officers to follow established policies, procedures, directives, and instructions regarding unwanted subjects under such circumstances as presented by this case;

p)   Imposing proper sanctions or discipline for officers who are deficient or malfeasant;

q)   Monitoring and disciplining the on-duty improper use of police equipment and materials;

r)   Monitoring and disciplining on-duty time used for purely personal reasons;

s)   Procedures for identifying officers who are in need of remedial training or intervention; and

t)   Procedures for the complete statistical analysis of police complaints from whatever source, I.A. outcomes, use of force incidents, the sexual use of force against victims, procedures which permit the

40

prompt identification and retrieval of all sexually-related complaints, use of force complaints, outcomes, and evidence, (including videos) on an individual officer basis; etc.

134. Based upon information and belief, the Township is also liable for the harms and losses suffered by Serano based upon a <u>Monell</u> theory of municipal policy or practice liability, predicated, <u>inter alia</u>, upon:

   a) Its failure to properly screen / hire Defendant Officer Golden, whose background was so obviously inadequate as to put the Township on notice of the likelihood that a violation or injury would result because, adequate scrutiny of Defendant Golden's background would have revealed previous allegations of sexual harassment and/or sexual assault having been levelled against him and prior employment discipline for misconduct involving women, which would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire him would be the deprivation of a third party's federally protected rights;

   b) Its failure to properly subject Defendant Officer Golden to initial and periodic reasonable psychiatric and drug use examination and testing, the results of which would lead a reasonable policymaker to conclude that Defendant Officer Golden may be suffering from psychological

and/or substance abuse problems which would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire him would be the deprivation of a third party's federally protected rights;

c) Its failure to train Defendant Officer Golden with regard to the proper response to the unwanted, highly visibly intoxicated female patron situation which he encountered on January 7, 2019.

d) Its failure to discipline Defendant Officer Golden notwithstanding a prior pattern of similar instances and circumstances under which supervisors' and decisionmakers' actions or inactions could be found to have communicated a message of approval to offending subordinates, including Defendant Officer Golden, regarding past instances of off-duty activities which occurred during unwarranted periods of radio silence which were not monitored, reported or investigated by the Police Department, supervisors or decisionmakers, as well as with regard to allegations of past alleged sexual misconduct involving women, both on and off duty; as well as

e) The fact that the Constitutional transgressions alleged herein implements or executes a policy, regulation or decision officially adopted by the Township, or informally adopted by custom with

specific regard to a failure to closely monitor on duty officers while they are in the field, especially when they are not "doubled" (i.e. operating a patrol car alone).

135. It was also the policy and/or custom of the Defendant South Whitehall Township to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated and/or justified by the South Whitehall Township, including, but not limited to, complaints of citizens.

136. It was also the policy and/or custom of the Defendant South Whitehall Township to inadequately screen during the hiring process (including psychological and drug screening) and to fail to intermittently test thereafter, and to inadequately train and supervise its police officers, including Defendant police officers Golden and Doe, thereby failing to adequately discourage and protect against Constitutional violations on the part of its police force in general, and Defendant Officer Golden and Doe in particular.

137. The Defendant South Whitehall Township did not require or demand appropriate in-service training or re-training of officers who were known to be deficient or to have engaged in police misconduct including especially the excessive use of force, or sexual misadventures, or who were known to encourage or tolerate same.

138. The Defendant South Whitehall Township also did not adopt needed policies, which should have been intended and calculated to avoid the Constitutional violations referred to herein, including specifically those that follow.

139. The lacking practices or procedures (or policies), which Defendant South Whitehall Township was required, at a minimum, to promulgate, implement, monitor and, if necessary, modify, include, *inter alia*, the following: a heightened supervisory sensitivity and vigilance for uncovering and eradicating unconstitutional violations, especially those that are driven by inadequately trained and/or overly aggressive officers; procedures whereby members of the public who have experienced Constitutional police violations are encouraged to access a simple, convenient, non-retaliatory, and responsive procedure to register their complaints and receive prompt, objective responses; procedures carefully cataloging complaints (legal, formal and informal) and use of force, and their respective outcomes – by name, nature of claim, evidence available and resolution, including corrective action, if any; procedures for the efficient, effective, objective investigations of all claims and complaints, their analysis and requiring the prompt and open imposition of disciplinary, corrective action, remedial training, or policy or procedural change; procedures for promptly

responding to those who registered complaints, or who self-reported, and for securing citizen feedback concerning the resolution reached (necessary to restore good community relations and to encourage the belief that their complaints will not be ignored); procedures for gender sensitivity training; procedures for the active pursuit and enlistment of female police officers; procedures requiring remedial training in Fourth and Fourteenth Amendment safeguards including citizen's Constitutional rights to be free from violations of bodily integrity, excessive force, and the use of force limitations; procedures requiring training and remedial retraining in the Fourth and Fourteenth Amendment safeguards; practices and procedures for officer conduct which places the focus of the truth-seeking process on eliminating police misconduct rather than protecting it from prosecution, punishment or discipline; procedures for immediately identifying circumstances and the identity of officers who are excessive force prone, sexually predatory or who appear to lack the judgment or temperament to deal with confrontation, especially from individuals who may be impaired; procedures for conducting both internal and external objective reviews of all claims of unconstitutional or otherwise unlawful police conduct; procedures for identifying officers who are in need of remedial training; procedures for testing the validity and efficiency of I.A. and O.P.S. and F.T.O. operations;

and procedures for effectively and independently, monitoring officers' drug (including steroid) or alcohol abuse (such as random testing) and for monitoring and testing officer's mental health, especially those who may demonstrate a temperament or lack of judgment which may lead to inappropriate sexual conduct and force responses.

140. The existing customs within the South Whitehall Township Police Department created an unreasonable risk of injury in the absence of the above-specified supervisory practices, policies and procedures.

141. The South Whitehall Township policy makers were aware that these risks existed because they were obvious and also because these risks had resulted in Constitutional harms, which had occurred previously under their supervision.

142. The South Whitehall Township policy makers, including the Township Manager, were indifferent to these risks, given their failure to eliminate or remediate those responsible for the past unconstitutional consequences of said risks, and their failure to modify departmental practices, policies, General Orders, and procedures which have been brought to their attention as being deficient, if not unconstitutional on their face.

143. It was the policy and/or custom of the Defendant South Whitehall Township to ignore, to allow and even promote the inappropriate use of force by its

officers, as well as the commission of the other Constitutional violations described herein, including the attempted cover-up of such acts and/or omissions.

144. Either the policies, practices and procedures adopted by the Defendant Township or, the Township's deliberate indifference toward enforcing them; or the deficiencies in and/or complete absence of said policies, practices and procedures, created an unreasonable risk of sexual assault upon female citizens of which the Township's supervisors and/or policymakers were aware, or in the reasonable exercise of their supervisory powers, should have been aware, and failed to take reasonable steps to remedy.

145. As a result of the above described policies and customs and failure to enforce and/or adopt necessary and appropriate policies, police officers of the Defendant South Whitehall Township, including the Defendants, believed that their actions would not be properly monitored by supervisory officers or the Township or its Manager and reasonably believed that their misconduct would not be investigated or sanctioned, but would be tolerated and even encouraged.

146. The above described deficient policies, supervisory practices, and customs, and the failure to enforce, modify, terminate and/or adopt other necessary and appropriate policies, practices, procedures, and General Orders,

demonstrates a deliberate indifference on the part of the policymakers of the Defendant South Whitehall Township, and has continued to serve as the moving force behind, and the cause of, the violation of the Plaintiff's rights as alleged herein, as well as the claimed damages which resulted therefrom.

147. But for this deliberate indifference, the injuries, which were suffered by the Plaintiff, would, in all likelihood, not have occurred.

148. In practice, the Township retains ultimate responsibility to supervise and monitor the overall operation of the Police Department, and the Township Manager is responsible to supervise and monitor the day-to-day operations of the Department. Each has final decision-making authority with regard to the operational conduct of the subordinate members of the police force; each retained the authority to measure the conduct and decisions of police subordinates; each played a role in supervising the members of the police force, and in fashioning and implementing Departmental police policies, practices, procedures and customs, and presumably did so in consultation with one another. Each is a person whose actions may fairly be said to represent official municipal policy or custom.

149. It is also believed and therefore averred that the Township also permitted the five (5) Police Chiefs of the Department (over the 50 years since the Police Department was created by the Township) to play the role of a delagatee in

permitting and/or implementing several of the above customs, policies and practices that created an unreasonable risk of Constitutional violations on the part of their subordinates, including the Defendant Officers; and, that the Township's failure to change those policies or employ corrective practices is a direct cause of the unconstitutional conduct, which was inflicted upon the Plaintiff.

150. The existing custom and practice followed by the Township, its Commissioners and Manager was to disengage itself as much as possible from the actual operations of its police department, to fail to inquire about, or otherwise turn a blind eye toward, the lack of proper training and fitness of its police hires and the existence of any Constitutionally implicated complaints about the conduct of their officers.

151. This deliberate indifference to the violations of citizens' Constitutionally protected rights, not only reinforced the justifiable belief among the citizenry that it was useless to register complaints about police misconduct and abuse, but it created further ill-will, and even more significantly, sent a message to the members of the police force that their violations of the community's Constitutional rights would be tolerated and go unnoticed, as well as unpunished, thereby encouraging further and even more lack of training and supervision, and produced serious Constitutional violations and an

unreasonable risk of just the sort of harms that were visited upon Plaintiff herein.

152. The lack of continuous screening, testing, monitoring and training of police officers and the institutionalization of a culture of South Whitehall Township, of accepting Constitutionally abusive police misconduct within the South Whitehall Police Department was so obvious and widespread as to have the force of policy and was apparent to the Township as well as any reasonable supervisor or policymaker, and, their combined indifference to the risks that these customs, practices, or supervisory procedures presented was the moving force which resulted in the Constitutional violations suffered by the Plaintiff.

153. This was no truer than with the Defendant Township's deliberate indifference to the need to provide its officers, including most especially, Defendant Golden, with more or better training with regard to the safeguards afforded by the Fourth and Fourteenth Amendments, including particularly the prohibitions to using force, and most specifically, forced used to violate the right to bodily integrity.

154. Even should discovery in this matter not disclose the pattern of relevant misconduct which Plaintiff believes existed with regard to South Whitehall police officers in general and the Defendant officers in particular, evidence

of <u>Monell</u> liability and deliberate indifference to Constitutional rights is evidence by the single incident which occurred here because:

a) Township policymakers know that their police officers will confront subjects who were female and who were intoxicated to a degree that their rights to bodily integrity would be placed in potential jeopardy.

Given the number of intoxicated females routinely encountered in modern policing in a jurisdiction like the Township of South Whitehall (especially when it is in close proximity to no fewer that 12 colleges, including 8 private colleges and universities, 2 public colleges and universities and 2 community colleges with roughly 50% female population and not less than three dozen establishments serving alcohol), it should be obvious to South Whitehall Township policymakers that they will need to prepare for situations where females have become publicly intoxicated.

Such situations are common and the Township and its policymakers cannot blind themselves to the risk of sexual abuse of this vulnerable population by a member of a nearly all – male police force.

The discrete act of sexually assaulting an intoxicated female citizen while on duty is so patently inappropriate that there should be no need for training in regard to that ultimate act. However, the need to train

officers confronting the circumstances which lead here to the removal

of and ultimate assault on the Plaintiff, and a complete lack of policy

regarding the proper course to follow under the extant circumstances,

including the need for intervention and timely reporting requirements

for officers who were on scene as well as for those who were obligated

to remotely monitor an officer who simply disappeared from duty for

an extended period of time, are needs which are so obvious and

necessary to avoid Constitutional violations, that the failure to train in

that regard constitutes deliberate indifference to the obvious risk of the

Constitution violation which followed.

b) Township policymakers also know that such a situation involves the

difficult choice of how to deal with, and who should deal with, the

visibly intoxicated female subject and her situation.  Should the motel

be told that this is a civil matter which does not involve the police?

Should she be detained? Should she be cited and released? Should she

be taken into custody (eg. "drunk tank)? Should she be arrested? Should

she simply be encouraged to remove herself from the location? What

should be done if she fails to comply? Should she be placed in public

transportation to return her to her home? Should she be taken home

escorted by a police officer and, if so, who (i.e. male or female, one or

two)? Should she be removed to the confines of her registered motel room and be told to stay there? Should she be forced to stay there? Should a specifically trained social worker or other professional be called to handle the situation in a non-law enforcement manner? Should a drug and alcohol counselor be called to handle the matter? Paramedics? A family member or close friend? Moreover, the situation also involves a difficult choice by cohort police officers who must choose when to intervene or to report improper conduct and how?

   c) A wrong choice by an officer will frequently cause a deprivation of Constitutional rights, especially those implicating the Fourth and Fourteenth Amendments, as here.

155. <u>Monell</u> liability here is also evidenced and reaffirmed by post-incident conduct which reveals that the Township and its policymakers and supervisors had a pattern of tacitly approving unconstitutional practices and accepted and perpetuated a custom and culture within the South Whitehall Police Department regarding same.

156. Here, that post-incident conduct includes, inter alia:

   a) Failing to properly investigate the subject incident including the roles of Defendants Doe;

   b) Failing to discipline and/or retrain Defendants Doe;

c) Making no changes in policies, practices, procedure or training in light of the unconstitutional actions of Defendant Golden and Defendants Doe, especially in view of the fact that the wrongdoing of all Defendant Officers would have gone undetected, unreported and un-responded to in the absence of the Plaintiff's continued pursuit of justice;

d) Failing to collect evidence, including retrieving recordings from both motels involved;

e) Making no changes in the policies, practices, procedures or training including that with the regard to the Township's policymakers and supervisors.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants Doe and Golden, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, for punitive damages, and for other such relief as the Court deems just.

## COUNT VI
### Negligence
### *State Law Claim Against South Whitehall Township*

157. The preceding paragraphs are incorporated herein by reference as though fully set forth.

158. At all times relevant, Defendants Golden and Doe were employed as a full time paid South Whitehall police officers and the Defendant Township of South Whitehall had the right to exercise control over their day-to-day activities within the time of service.

159. All acts attributed to Defendants Golden and Doe complained of hereinbefore were committed within the time and scope of their employment as sworn police officers by Defendant Township of Whitehall.

160. The Township of South Whitehall was negligent in properly screening, in hiring, training and controlling his on-duty actions, resulting proximately, directly and legally in the Constitutional harms and damages suffered by the Plaintiff.

161. The employer-employee, master-servant relationship between the Defendant Officers and the Township renders Defendant South Whitehall Township vicariously liable for the acts of Defendants Golden and set forth in detail hereinbefore.

162. The Township has no immunity from liability based upon any statutory or other protections because the conduct of Defendant Golden and Doe

constitute one or more crimes as well as willful misconduct and, the Defendants Doe intentionally aided and abetted the commission of said crimes or, participated in the same willful misconduct by their conspiratorial actions as alleged herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendant Township for compensatory damages and such other relief as the Court deems appropriate.

### COUNT VII
**Assault**
*State Law Claim Against Defendant Golden*

163.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

164.   Defendant Golden's conduct as described hereinbefore was intended to cause an imminent apprehension of a harmful or offensive bodily contact with the Plaintiff and actually did cause imminent apprehension.

165.   In doing so, Defendant Golden committed the state law cause of action for assault and is therefore directly, proximately and legally liable for the harms said assault inflicted upon the Plaintiff as more fully set forth hereinbefore.

166.   Said conduct was intentional, wanton, willful entitling Plaintiff, in addition to the compensatory damages sought, to an award of punitive damages or exemplary damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendant Golden for compensatory and punitive damages and such other relief as the Court deems appropriate.

## COUNT VIII
### Battery
### *Against Defendant Golden*

167.  The preceding paragraphs are incorporated herein by reference as though fully set forth.

168.  Defendant Golden's conduct as described hereinbefore amounts to the actual infliction of the offensive bodily conduct apprehended in the aforementioned assault by Defendant Golden and therefore constitutes an actionable battery upon the Plaintiff under Pennsylvania law.

169.  As a direct, proximate and legal cause of Defendant Golden's battery upon the Plaintiff, the Plaintiff suffered and will continue to suffer for an indeterminate time in the future, the damages, harms and losses identified hereinbefore.

170.  Said battery was willful thereby entitling the Plaintiff, in addition to the compensatory damages sought, to an award of punitive or exemplary damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendant Golden for compensatory and punitive damages and such other relief as the Court deems appropriate.

## COUNT IX
### Intentional Infliction of Emotional Distress
### *Against Defendant Golden*

171. The preceding paragraphs are incorporated herein by reference as though fully set forth.

172. As a direct and proximate result of the extreme, outrageous, and reckless conduct of the Defendant, the Plaintiff has suffered and continues to suffer from severe emotional distress, mental anguish, bodily harm, psychological trauma, shame, humiliation, fright, horror, grief, anger, disappointment, worry, and psychic pain and suffering, and had instilled in her mind an immediate and permanent sense of fear and trepidation, and the conduct, acts, and omissions surpass all bounds of decency universally recognized in a civilized society.

173. As a direct and proximate result of the extreme, outrageous, and reckless conduct of the Defendant, the Plaintiff has suffered the damages as alleged herein.

174. Defendant Golden's act of sexually assaulting the Plaintiff was not negligent, but rather an intentional, wanton and willful act which

constituted willful misconduct in that he intended to bring about the result which followed and which was substantially certain to follow.

175. Defendant Golden's conduct, as described hereinbefore, constitutes intentional outrageous or extreme conduct which cause severe emotional distress to the Plaintiff.

176. Said conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendant Golden for compensatory and punitive damages and such other relief as the Court deems appropriate.

## COUNT X
### State Civil Conspiracy
#### *Defendants Golden and Does*

177. The preceding paragraphs are incorporated herein by reference as though fully set forth.

178. Defendants Golden and Doe conspired to engage in, and facilitate, the tortious State claims alleged herein, whereby each defendant acted in concert, pursuant to an agreement, to cause the state harms or in some way facilitated the conspiratorial objective of inflicting the resulting harms,

upon the Plaintiff, by their own acts or omissions or by those of fellow co-conspirators.

179.   As a result of the aforesaid conspiracy engaged in by Defendants, Plaintiff suffered the damages stated herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendants Golden and Doe, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendants in their individual capacities and, such other relief, including injunctive relief, which the Court may fund appropriate.

<u>**COUNT XI**</u>
**State Constitution Violations**
***Against Defendant Golden***

180.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

181.   The conduct of the Defendant, as alleged herein, was violative of the Plaintiffs' rights under Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania.

182.   The Supreme Court of Pennsylvania has not yet ruled on whether violations of the aforesaid provisions of the Pennsylvania Constitution give rise to a private cause of action for compensatory damages.

183.   Accordingly, the Plaintiff only asserts her previously recognized and well-settled right to demand injunctive relief, nominal damages, and/or declaratory relief, based upon the facts alleged hereinbefore which substantiates the averred Pennsylvania Constitution violations.

184.   Plaintiff believes and therefore alleges that she is at continued risk, along with others, of suffering assault-type harms by members of the South Whitehall Police Department in the event that court intervention does not occur and appropriate non-compensatory relief is not afforded to her.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in Plaintiff's favor on her Pennsylvania Constitutional claims and afford her the relief requested in the form of nominal damages, injunctive relief and / or the entry of a declaratory judgment.

## OTHER

185. Plaintiff respectfully requests a jury to deliberate upon the within causes of action.

186. The within case is not subject to arbitration.

187. Where permitted, the Plaintiff demands reasonable legal fees, costs, interest, expenses, delay damages, compensatory damages, punitive damages and any other damages deemed appropriate by the Court, or authorized by law.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court for each Count alleged:

a)  Award compensatory damages to Plaintiff against the Defendants, jointly and severally, in an amount in excess of $150,000.00 exclusive of interest and costs;

b)  Award punitive damages to Plaintiff against Defendant Officers in their individual capacity, in an amount in excess of $150,000.00 exclusive of interest and costs;

c)  Award reasonable attorney's fees and costs to the Plaintiff, as may be awardable pursuant to 42 U.S.C. Section 1988, the Civil Rights Attorney's Fees Award Act of 1976, or any other appropriate statutory provisions; and

d)  Award such other and further relief, as this Court may deem appropriate.

Respectfully Submitted,
KAROLY LAW FIRM, LLC

Dated:  January 7, 2021                    By:  _____

Joshua E. Karoly, Esquire
PA Attorney I.D. # 206076
527 Hamilton Street
Allentown, PA  18101
(610) 437-1252
j.karoly@karolyfirm.com
Attorney for Plaintiff